EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Alejandro "Bimbo" Carmona Sánchez y Sherlil Orellana Gutiérrez, por sí y en representación de su hijo menor de edad, Alejandro Carmona Orellana; y Héctor Joel Negrón Pagán y Lizmarie Gutiérrez de Jesús por sí y en representación de su hijo menor de edad, Joel Alejandro Negrón Gutiérrez<br><br>Peticionarios<br><br>v.<br><br>Baloncesto Superior Nacional, Corp.; Gigantes de Carolina; Osos de Manatí; y otros<br><br>Recurridos | Certiorari<br><br>2024 TSPR 65<br><br>213 DPR ___ |

Número del Caso:  AC-2024-0022

Fecha:  18 de junio de 2024

Tribunal de Apelaciones:

Panel VIII

Represente legal de la parte peticionaria:

Lcdo. Iván A. Rivera Reyes

Representantes legales de la parte recurrida:

**Franquicia del Baloncesto Superior Nacional**
**Gigantes de Carolina y Osos de Manatí**

Lcdo. Andrés Guillemard Noble
Lcdo. Ramón L. Rosario Cortés

**Baloncesto Superior Nacional**

Lcdo. Lee R. Sepulvado Ramos
Lcdo. Gerardo J. Cruz Ortiz

Materia: Aplicabilidad de la Cláusula de Selección de Foro del Reglamento General del Baloncesto Superior Nacional.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Alejandro "Bimbo" Carmona Sánchez y Sherlil Orellana Gutiérrez, por sí y en representación de su hijo menor de edad, Alejandro Carmona Orellana; y Héctor Joel Negrón Pagán y Lizmarie Gutiérrez de Jesús por sí y en representación de su hijo menor de edad, Joel Alejandro Negrón Gutiérrez<br><br>    Peticionarios<br><br>        v.<br><br>Baloncesto Superior Nacional, Corp.; Gigantes de Carolina; Osos de Manatí; y otros<br><br>    Recurridos | AC-2024-0022 | *Certiorari* |

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco

En San Juan, Puerto Rico, a 18 de junio de 2024.

En esta ocasión examinamos si dos menores que juegan en la Liga Juvenil de la Federación de Baloncesto de Puerto Rico para equipos establecidos y subsidiados por franquicias del Baloncesto Superior Nacional (BSN), están sujetos a la Cláusula de Selección de Foro del Reglamento General del BSN. Esto, para cuestionar ante los foros judiciales una enmienda a ese cuerpo normativo que elimina la figura del "hijo de franquicia" del proceso de ingreso al BSN. Los beneficios de esta figura les fueron informados

cuando seleccionaron competir en estos equipos, y los habían completado o estaban próximos a completar previo a la enmienda.

Examinado el expediente y el derecho aplicable, concluimos que ambos menores están sujetos a las normas de las entidades demandadas. Sin embargo, por las razones que discutiremos a continuación, a estos no les aplica la Cláusula de Selección de Foro del Reglamento General del BSN. Esa Cláusula restringe a los jugadores de la Liga Superior Nacional de Baloncesto de Puerto Rico de recurrir las determinaciones del BSN ante los foros no deportivos. Por lo tanto, ambos jóvenes que juegan en la Liga Juvenil no están impedidos por esa Cláusula ni por el principio de autonomía deportiva para recurrir a los foros judiciales mediante el recurso de *injunction* luego de demostrar la razón para preterir el procedimiento interno de la organización.

**I**

El 28 de noviembre de 2023, la parte peticionaria presentó una Demanda sobre *Injunction* y Sentencia Declaratoria en contra de Baloncesto Superior Nacional, Corp. (BSN), así como contra los Gigantes de Carolina y los Osos de Manatí (franquicias demandadas).[1]

---

[1] La parte peticionaria está compuesta por el Sr. Alejandro "Bimbo" Carmona Sánchez y la Sra. Sherlil Orellana Gutiérrez, por sí y en representación de su hijo menor de edad, Alejandro Carmona Orellana; y el Sr. Héctor Joel Negrón Pagán y la Sra. Lizmarie Gutiérrez de Jesús, por sí y en representación de su hijo menor de edad, Joel Alejandro Negrón Gutiérrez. La Demanda incluyó una causa de acción por daños y perjuicios contractuales y extracontractuales.

Específicamente, argumentó que los menores Alejandro Carmona Orellana y Joel Alejandro Negrón Gutiérrez invirtieron tiempo, recursos y dinero en un momento crucial de su desarrollo atlético al jugar en las categorías Novicios y Juvenil de la Federación de Baloncesto de Puerto Rico (Federación) para las franquicias Gigantes de Carolina y Osos de Manatí, respectivamente. Sostuvo que confió en las manifestaciones de las entidades demandadas sobre el programa de "hijos de franquicia", según establecido en la Regla 20.1 del Reglamento General del BSN.[2] Como "hijos de franquicia", los jóvenes jugadores en las categorías Novicios o Juvenil de la Federación - que cumplieran con un máximo de diez (10) juegos por temporada durante un mínimo de dos (2) o más años consecutivos para una franquicia –podían, entre otros beneficios, ser reservados y removidos del sorteo de nuevo ingreso del BSN sin que la franquicia agotara uno de los turnos que le tocaría en el sorteo de jugadores novatos, aumentando así las oportunidades de ser escogidos por el equipo de su interés.

No obstante, indicó que el 13 de octubre de 2023, el BSN enmendó la Regla 20.1 del Reglamento General y eliminó el programa de "hijos de franquicia". Expresó que para esa fecha los menores habían cumplido o estaban próximos a

---

[2] Apéndice, págs. 209-210.

cumplir con lo requerido por esa disposición.[3] Por ello, explicó que el daño irreparable consistía en que al existir solo 36 posiciones en el sorteo y sobre 200 jugadores aspirantes era poco probable que fueran seleccionados por los equipos de su interés sin el beneficio de ser reclamados como hijos de franquicias, arriesgándose así a jugar para otro equipo lejos de su hogar, familia y entrenadores, entre otras razones. Además, sostiene que los menores no tienen Contratos firmados con el BSN y tampoco juegan en torneos del BSN, pero que habían depositado su confianza en sus manifestaciones oficiales y, por ello, participaban sin remuneración en las ligas menores para los equipos de las franquicias de las cuales deseaban ser considerados "hijos de franquicia".[4]

---

[3] Se aprobó la enmienda con el voto afirmativo de dos terceras partes de los componentes presentes de la Junta de Gobierno. Apéndice, pág. 247.

[4] El 31 de octubre de 2023, las franquicias de los Gigantes de Carolina, los Mets de Guaynabo y los Osos de Manatí presentaron una Querella ante el Director de Torneo del BSN, Lcdo. José M. Couto Llinás, de conformidad con el Reglamento de Procedimientos Adjudicativos del BSN. Apéndice, pág. 252. Solicitaron que la enmienda a la Regla 20.1 del Reglamento General del BSN no fuera aplicada a los jugadores que participaron con sus equipos de Novicios y Juvenil previo a la aprobación de la enmienda y se les reconociera el poder de reclamar como hijos de franquicia a los jóvenes jugadores. Hicieron hincapié en la obligación impuesta a las franquicias de invertir recursos y esfuerzos en los equipos de las categorías menores a cambio de poder reclamar jugadores como hijos de franquicia. La Querella fue desestimada por lo que solicitaron reconsideración ante el Presidente del BSN, Sr. Ricardo Dalmau, quien confirmó la determinación recurrida. Apéndice, págs. 278 y 285. Por consiguiente, recurrieron a la Comisión de Apelaciones de la Federación de Baloncesto de Puerto Rico, foro que determinó no intervenir en la controversia debido a la autonomía del BSN. En esta ocasión, acudieron al Tribunal Apelativo y Arbitraje Deportivo del Comité Olímpico de Puerto Rico, foro que desestimó la apelación debido a la pendencia del pleito ante el foro judicial. Apéndice, pág. 296.

El 11 de diciembre de 2023, el BSN solicitó la desestimación de la acción bajo los argumentos de falta de parte indispensable y falta de jurisdicción.[5] En cuanto a lo primero, sostuvo que en la Demanda no se acumularon a todas las franquicias que componen al BSN, y en cuanto al segundo argumento, entendió que los menores son jugadores del BSN en las categorías Novicios y Juvenil por lo que de manera libre, voluntaria e informada se sometieron a sus disposiciones reglamentarias, incluyendo la Cláusula de Selección de Foro dispuesta en el Art. 3.7 del Reglamento General y que requiere que la disputa se presente en primera instancia ante ese ente y los foros deportivos correspondientes. Sostuvo que la enmienda aplica a los sorteos que no han ocurrido y que a la fecha de la enmienda los demandantes no habían sido seleccionados como "hijos de franquicia".[6] El 18 de enero de 2024, el foro primario emitió una Resolución y Orden mediante la cual declaró no ha lugar la moción de desestimación presentada por el BSN.

Luego de varios trámites procesales, el 2 de febrero de 2024, el foro primario concedió el *injunction* solicitado a los fines de ordenar a la parte demandada que cesara y desistiera de su intención de aplicar la enmienda al Art. 20.1 del Reglamento General a las circunstancias

---

[5] Apéndice, pág. 136.

[6] La parte peticionaria se opuso a la desestimación por fundamentos similares a los antes expresados. Apéndice, pág. 163.

particulares de ambos menores.[7] Concluyó que del lenguaje del Art. 20.1 del Reglamento General y las manifestaciones de las entidades demandadas, estos confiaron en ser seleccionados directamente por las franquicias para las cuales jugaron en sus categorías menores y por la que descartaron otras alternativas que pudieron tener disponible para su desarrollo. Sin embargo, esta quedó tronchada ante una enmienda que les impide beneficiarse del estado de derecho previo. Determinó que aunque los menores tenían una relación contractual con las franquicias codemandadas, no les aplicaba específicamente el Art. 3.7 del Reglamento General sobre selección de foro y de agotamiento de remedios, pues estos no eran jugadores de un equipo de la "Liga Superior Nacional de Baloncesto" como textualmente requería la Cláusula de Selección de Foro. Añadió que tampoco les aplicaba esa disposición para permitir a la Junta de Directores modificar unilateralmente su Contrato de Afiliación. De igual forma, concluyó que la BSN es una entidad privada, autónoma y separada a la Federación por lo que no se rige por las disposiciones relacionadas con la autonomía del Comité Olímpico y sus federaciones afiliadas.

---

[7] El 30 de enero de 2024 se celebró la vista de *injunction*. Las partes prestaron su anuencia para que se consolidara la vista de *injunction* preliminar con el juicio en sus méritos con respecto a la solicitud de *injunction* permanente. Regla 57.2(b) de Procedimiento Civil, 32 LPRA Ap. V. La reclamación en daños y perjuicios fue desestimada a solicitud de la parte demandante quien desistía de la misma de expedirse el *injunction* solicitado.

Inconforme, el BSN recurrió ante el Tribunal de Apelaciones, foro que revocó la determinación apelada.[8] El foro apelativo intermedio concluyó que ante la estrecha relación entre las franquicias del BSN y el torneo BSN-D, los menores son jugadores de equipos pertenecientes a la Liga Superior Nacional de Baloncesto en sus categorías menores del BSN-D y, por lo tanto, están sujetos a la Regla 3.7 del Reglamento General. Igualmente, indicó que los menores debían dilucidar su reclamo dentro de los canales deportivos y estaban impedidos de recurrir a los foros judiciales sin antes agotar los remedios administrativos disponibles. Además, concluyó que la Asamblea Legislativa ha reconocido la autonomía del deporte para regirse por sus propios reglamentos y determinaciones, de acuerdo con la política del Olimpismo Internacional y que corresponde a los foros deportivos adjudicar, en primera instancia, el caso en sus méritos. Las posteriores mociones de reconsideración presentadas fueron denegadas.

Oportunamente, la parte peticionaria acude ante nos. Sostiene que el Tribunal de Apelaciones interpretó el concepto BSN-D como una Liga de Desarrollo de la *National Basketball Association* (NBA) a pesar de no ser comparables. Indica que los jugadores de esta última son jugadores profesionales que han firmado Contratos con

---

[8] Sentencia de 29 de febrero de 2024, notificada el 1 de marzo de 2024. Apéndice, págs. 1-20.

equipos de la NBA. Sin embargo, los menores demandantes tampoco cumplen con la definición del término "jugador" del Reglamento de Procedimientos Adjudicativos del BSN para que les sea aplicable ese cuerpo normativo, pues no han suscrito Contrato alguno con ninguna de las franquicias del BSN para jugar en los torneos del BSN. Ambos menores se limitaron a jugar en los torneos de la Federación que se rigen por sus propios Reglamentos y no por los del BSN. Por lo tanto, indica que la Sentencia les cerró la puerta de los tribunales para dilucidar los alegados incumplimientos contractuales dejándolos en un limbo jurídico. La parte peticionaria añade que por ser el BSN una entidad autónoma de la Federación no le es de aplicación la normativa de autonomía deportiva.

Por otro lado, mediante *Escrito urgente sobre apelación presentada por los demandantes-apelantes* comparecieron las franquicias codemandadas y también nos solicitan que acojamos el recurso presentado y revoquemos la determinación recurrida. Así las cosas, el 26 de abril de 2024, concedimos a la parte recurrida un término de veinte (20) días para mostrar causa por la cual no debamos expedir el recurso. El BSN compareció y presentó argumentos similares a los expresados en los foros recurridos. Sostuvo que los menores son "jugadores" sujetos a los Reglamentos de la Federación y del BSN por lo que tienen la obligación de someter sus reclamos a los foros deportivos. Además, indicó que la Regla 20.1 del

Reglamento General reconoce derechos y prerrogativas exclusivamente a favor de las franquicias.

Contando con la comparecencia de ambas partes, acogemos el recurso como *certiorari*, expedimos el mismo y estamos en posición de resolver.[9]

## II

### A. Autonomía deportiva

El BSN es una asociación privada y autónoma, afiliada a la Federación de Baloncesto de Puerto Rico. Por lo tanto, cuenta con personalidad jurídica propia y goza de autonomía frente a la Federación en cuanto a sus reglamentos, sistemas de competencia, elegibilidad y sistema económico interno. No obstante, sus disposiciones no pueden contravenir la Constitución y las normas aplicables de la Federación. Art. 1 del Reglamento General, Apéndice, pág. 182; Art. 28.3 Constitución de la Federación. En vista de ello, el BSN sostiene que por su relación con la Federación, la Ley Núm. 8-2004, según enmendada, conocida como Ley Orgánica del Departamento de Recreación y Deportes, 3 LPRA sec. 444b *et seq.*, le extiende la misma autonomía para atender toda controversia

---

[9] En su escrito, la parte peticionaria nos presenta el caso *Martínez Medina v. Federación de Tiro con Arco de Puerto Rico, Inc. y otros*, KLAN202000630 de 23 de agosto de 2021. Sostiene que en ese caso se determinó que la autonomía deportiva de la Federación de Tiro con Arco y el Comité Olímpico de Puerto Rico no era razón suficiente para desestimar la reclamación por daños y perjuicios. No obstante, en el caso de autos la reclamación en daños y perjuicios fue desestimada a solicitud de la parte demandante.

deportiva. Esta conclusión fue acogida por el foro recurrido, pero no podemos avalar tal interpretación.

En lo pertinente, el Art. 20 de la Ley Núm. 8-2004, *supra*,

> reconoce la autonomía del **Comité Olímpico** y las **federaciones deportivas nacionales**, para dirigir el **deporte olímpico** y para regirse por sus propios reglamentos y determinaciones exentos de la intervención del Estado en los asuntos de **jurisdicción olímpica y federativa**, sin menoscabar la facultad del Departamento para fiscalizar los fondos o donativos otorgados por éste. (Énfasis suplido).

Los contornos de ese reconocimiento no han sido definidos por este Tribunal. Tampoco este caso nos brinda la oportunidad para expresarnos como instan las partes. Esto pues, de la disposición citada se desprende el reconocimiento de la autonomía deportiva al Comité Olímpico y las federaciones deportivas nacionales, mientras que en el caso de autos nada atendemos concerniente a las disposiciones de una federación deportiva nacional ni tampoco sobre los deportes olímpicos o federativos. Este caso se limita a los criterios de elegibilidad de los atletas del BSN, una asociación privada y autónoma, sobre aspectos para los cuales la entidad goza de autonomía frente a la Federación.[10]

---

[10] Además, surge del expediente que ante el cuestionamiento de la enmienda a la Regla 20.1 del Reglamento General del BSN por las franquicias afectadas, la Federación declinó intervenir mediante jurisdicción apelativa reconociendo la facultad del BSN para autorregularse, crear su propio Reglamento y establecer sus reglas de elegibilidad para los atletas principiantes.

### B. Asociaciones u organizaciones privadas, la relación con sus miembros y la intervención de los tribunales

Aclarado lo anterior, el BSN es una organización voluntaria de carácter privado compuesta por 12 franquicias. Como asociación privada, la relación con sus miembros es de carácter contractual. *Asoc. Res. Los Versalles v. Los Versalles*, 194 DPR 258 (2015). Por lo tanto, las partes pueden acordar cualquier cláusula que no sea contraria a la ley, a la moral y al orden público.[11] Art. 1232 del Código Civil, 31 LPRA sec. 9753.

Específicamente, "los reglamentos de una organización son parte del contrato que regula la relación entre dicha entidad y sus miembros. En ese sentido, los reglamentos constituyen la ley entre las partes, en tanto no atenten contra el ordenamiento jurídico, la moral ni el orden público". *González Aristud v. Hosp. Pavía*, 168 DPR 127, 137 (2006). Véase, Art. 1233 del Código Civil, 31 LPRA sec. 9754. Véase además, *Asoc. Res. Los Versalles v. Los Versalles*, *supra*; *Amador v. Conc. Igl. Univ. De Jesucristo*, 150 DPR 571 (2000). Así, los miembros de una asociación acuerdan someterse y regirse por sus reglas y reglamentos. Estos generan derechos y obligaciones vinculantes para ambas partes que deben ejercitarse y cumplirse conforme a las exigencias de la buena fe. Art.

---

[11] A tenor con el principio de libertad de contratación hemos reconocido la inclusión de las Cláusulas de Selección de Foro en los Contratos. Véase, *Bobé et al. v. UBS Financial Services*, 198 DPR 6 (2017), para una exposición detallada de esta Cláusula.

15 del Código Civil, 31 LPRA sec. 5334. Véase, *Amador v. Conc. Igl. Univ. De Jesucristo*, *supra*, pág. 582.

Como corolario del principio de buena fe, hemos reconocido que a nadie es lícito ir ni obrar contra sus propios actos. Con la Doctrina de Actos Propios se protege la confianza depositada en estos actos, el interés social y la consecución de un ideal de justicia.[12] *Alonso Piñero v. UNDARE, Inc.*, 199 DPR 32 (2017); *Int. General Electric v. Concrete Builders*, 104 DPR 871 (1976).

> La Doctrina de Actos Propios tiene como elementos:
>
> (a) Una conducta determinada de un sujeto, (b) que haya engendrado una situación contraria a la realidad, esto es, aparente y, mediante tal apariencia, susceptible de influir en la conducta de los demás, y (c) que sea base de la confianza de otra parte que haya procedido de buena fe y que, por ello, haya obrado de una manera que le causaría un perjuicio si su confianza quedara defraudada. *Alonso Piñero v. UNDARE, Inc.*, *supra*, págs. 55-56 citando a *Int. General Electric v. Concrete Builders*, *supra*, pág. 878.

Por lo tanto, no se puede asumir conducta contradictoria a la que ganó la confianza de la otra parte, quien descansó y actuó a base de ella.

Por otro lado, ante disputas internas o decisiones que afecten a sus afiliados, estos deben agotar los procedimientos internos de la organización. Como norma

---

[12] E. Fontánez Torres, *Obligaciones y contratos*, 75 Rev. Jur. UPR 245, 252 (2006) ("[E]l Tribunal en *International General Electric* acogió la teoría de la declaración que expone que en las controversias contractuales y de índole obligacional, por razones de política jurídica, hay que dar mayor importancia al efecto que tuvo lo declarado en el receptor de la declaración".)

general, los tribunales no intervendremos en estos asuntos. Sin embargo, hemos reconocido nuestra capacidad de intervenir cuando no se satisfagan los requisitos mínimos exigibles en virtud de la relación contractual, cuando las determinaciones de una asociación sean arbitrarias, caprichosas o irrazonables, así como, cuando la parte esté expuesta a un daño irreparable y a la ausencia de un remedio eficaz, completo y adecuado. *González Aristud v. Hosp. Pavía*, *supra*, pág. 137; *Universidad del Turabo v. L.A.I.*, 126 DPR 497 (1990) (Sentencia); *Peña v. Federación de Esgrima de P.R.*, 108 DPR 147 (1978); *Hernández v. Asoc. Hosp. del Maestro*, 106 DPR 72 (1977)(*Per Curiam*); *Logia Adelphia v. Gran Logia Soberana*, 41 DPR 443 (1930). En cuanto a esta última situación, la concesión del remedio extraordinario de *injunction* debe cumplir con los términos de la Regla 57 de Procedimiento Civil, 32 LPRA Ap. V, y descansa en la sana discreción del tribunal luego de haber evaluado las circunstancias particulares del caso.

Al intervenir e interpretar un Contrato, el Código Civil nos provee unas reglas que rigen supletoriamente el análisis de las disposiciones bajo examen. *Asoc. Res. Los Versalles v. Los Versalles*, *supra*. A saber, si los términos del Contrato son claros y no dejan duda sobre la intención de las partes, se estará al sentido literal de sus palabras. Art. 354 del Código Civil, 31 LPRA sec. 6342. Por otro lado, nuestro ordenamiento jurídico reconoce el

Contrato de Adhesión.  En particular, el Art. 1248 del Código Civil, 31 LPRA Sec. 9802, define el Contrato de Adhesión y establece las normas interpretativas aplicables. Este Contrato es aquel en el que "el aceptante se ve precisado a aceptar un contenido predispuesto" por lo que sus Cláusulas "se interpretan en sentido desfavorable a la persona que las redacta y en favor de la persona que se vio precisada a aceptar su contenido".[13]

**C. Disposiciones del Reglamento General del BSN**

Cónsono con las facultades de una asociación, el Art. 14.1 del Reglamento General del BSN regula la entrada de jugadores al BSN a través de un sorteo y un sistema de turnos. No obstante, esta entidad adoptó también la Regla 20.1 del Reglamento General del BSN la cual tiene implicaciones sobre este proceso de admisión y contratación.  Así, al momento que los menores comenzaron a jugar para sus respectivas franquicias el Art. 20.1 del Reglamento del BSN disponía lo siguiente:

> Todas las franquicias del BSN tendrán la obligación de participar en el torneo de desarrollo de categorías menores del Baloncesto Superior Nacional (BSN-D).  Ello quiere decir que **las franquicias presentarán un equipo de su municipio con el nombre de la franquicia en los torneos de Novicios y Juvenil**. La organización y participación de dichas categorías menores no podrá ser delegada a clubes o equipos no pertenecientes a las franquicias del BSN.  Será responsabilidad de todas las franquicias del BSN trabajar sus respectivas categorías menores con los recursos de su organización superior.  **Todo jugador que haya**

---

[13] Véase el Artículo 1249 del Código Civil, 31 LPRA Sec. 9803, sobre la anulabilidad de Cláusulas en los Contratos celebrados por adhesión.

**participado en dos o más años consecutivos anteriores a ser elegible según cláusula "De Los Jugadores" en el sistema finca de la franquicia será considerado hijo de franquicia y no tendrá que formar parte del sorteo de jugadores, y podrá ser reclamado por el equipo sin perder el turno del sorteo.** El equipo podrá reclamar como hijo de franquicia cuantos jugadores de su sistema cualifiquen sin restricción alguna el día del sorteo. Aquel jugador seleccionado que no firme contrato para su equipo podrá ser reclamado como reserva por cualquier otro equipo en cualquier momento antes o durante la temporada correspondiente.

Aquel jugador de equipo finca que haya participado en dos o más años consecutivos en dicho sistema y decida estudiar y-o jugar fuera de la jurisdicción del ELA será considerado hijo de franquicia para todos los efectos cuando éste se haga elegible.

Las cláusulas de elegibilidad para el torneo BSN-D, serán las indicadas en las "Reglas del Torneo BSN-D".

El equipo que falle en tener equipos fincas estará sujeto a sanciones económicas y suspensión de participación de la franquicia. (Énfasis suplido).

Puede observarse que esta regla requiere a las franquicias establecer y subsidiar sus propios equipos en las categorías Novicios o Juvenil de la Federación de Baloncesto de Puerto Rico. A cambio, le concedía a las franquicias y a los jóvenes jugadores - que cumplieran con un máximo de diez (10) juegos por temporada durante un mínimo de dos (2) o más años consecutivos para una franquicia - el beneficio de ser reservados y removidos del sorteo de nuevo ingreso del BSN sin que la franquicia agotara uno de los turnos que le tocaría en el sorteo de jugadores novatos.

Sin embargo, el 13 de octubre de 2023, el Art. 20.1 del Reglamento General del BSN fue enmendado y por consiguiente desde entonces establece que:[14]

> Todas las franquicias del BSN tendrán la obligación de participar en el torneo de desarrollo de categorías menores del Baloncesto Superior Nacional (BSN-D). Ello quiere decir que las franquicias presentarán un equipo de su municipio con el nombre de la franquicia en los torneos de Novicios y Juvenil. La organización y participación de dichas categorías menores no podrá ser delegada a clubes o equipos no pertenecientes a las franquicias del BSN. **Será responsabilidad de todas las franquicias del BSN trabajar sus respectivas categorías menores con los recursos de su organización superior, sin que ello le confiera derecho de reserva alguno sobre los jugadores de Novicio y Juvenil independiente de que hubiesen participado con dichas franquicias previo a la aprobación de la presente regla. Ningún equipo podrá bajo ninguna condición reservar jugadores de Novicios y Juvenil como hijo de franquicia, ni reclamar interés propietario sobre estos y una vez sean elegibles incursionarán al BSN a través del sorteo de jugadores de nuevo ingreso a celebrarse cada temporada.** Ninguna disposición de este o cualquier reglamento del BSN podrá interpretarse de manera inconsistente con esta regla, y de existir dicha regla la misma debe entenderse derogada.

> El equipo que falle en tener equipos fincas estará sujeto a sanciones económicas y suspensión de participación de la franquicia. (Énfasis suplido).

---

[14] Entre las determinaciones de hechos del foro primario consta que:
74. Los representantes de todas las franquicias y la Asociación de Jugadores de Baloncesto de Puerto Rico participaron del proceso deliberativo y de evaluación que culminó en la aprobación de la enmienda reglamentaria en controversia.

75. La mayoría de los miembros de la Junta del BSN (10 de 13) votaron a favor de la aprobación de la enmienda propuesta. Las franquicias de Carolina, Guaynabo y Manatí votaron en contra. La Asociación de Jugadores del BSN votó a favor de la enmienda. Apéndice, pág. 38.

Por otro lado, el Art. 3.7 del Reglamento General del BSN sobre el reconocimiento de autoridad reglamentaria y renuncia sobre foros no deportivos establece en lo pertinente que:

> Todo aquel que asuma el cargo de apoderado o coapoderado, Gerente General, personal administrativo del BSN, Árbitros, Oficiales de Mesa, Dirigentes, **Jugadores, de cualquier equipo de la LIGA SUPERIOR NACIONAL DE BALONCESTO DE PUERTO RICO**, reconocen que se someten a las disposiciones reglamentarias de cualquier tipo que rijan el organismo y sus torneos, que estén vigentes o que sean aprobadas de tiempo en tiempo por la Junta de Directores de la Liga y que darán fiel cumplimiento a las mismas.
>
> En consecuencia, reconocen que asumir dichos cargos constituirá una **renuncia expresa a recurrir a foros no deportivos para dilucidar cualquier controversia que surja por la aplicación de tales disposiciones reglamentarias sin agotar remedios administrativos previamente.** Violentar las disposiciones de este artículo será razón suficiente para la expulsión de la persona que así incumpla de toda función en la Liga. (Énfasis suplido).

### III

En el caso de autos, quedó determinado que existe una relación contractual entre los jóvenes jugadores Alejandro Carmona Orellana y Joel Alejandro Negrón Gutiérrez con las franquicias codemandadas, los Gigantes de Carolina y los Osos de Manatí, respectivamente, al estar afiliados para participar en los equipos de las ligas menores de la Federación de Baloncesto de Puerto Rico. Tampoco hay controversia en que estas franquicias son miembros del

BSN. Así, pues, la Constitución y Reglamentos de estas organizaciones rigen la relación contractual de las partes.

En vista de lo anterior, el Art. 3.7 del Reglamento General del BSN establece una Cláusula de Selección de Foro que impide a los jugadores de los equipos de la Liga Superior Nacional de Baloncesto de Puerto Rico recurrir a foros no deportivos previo al agotamiento de remedios administrativos. El Art. 3.7 es claro sobre a quienes aplica. Por lo que estando al sentido literal de sus palabras, la Cláusula de Selección de Foro aplica a los "jugadores de los equipos de la Liga Superior Nacional de Baloncesto de Puerto Rico". Art. 354 del Código Civil, *supra*. De lo contrario y de haberse considerado ambigua, la disposición se interpretaría en favor de la persona que se vio precisada a aceptar su contenido, es decir, de los menores. En este caso, los jóvenes jugadores participan en la Liga Juvenil de la Federación en equipos establecidos y subsidiados por franquicias del BSN, mas no en la Liga Superior Nacional de Baloncesto del BSN. Por lo tanto, a estos no les aplica la Cláusula de Selección de Foro. Erró el foro apelativo al extender su aplicación.

Sin embargo, lo anterior no dispone del caso, pues hemos expresado que los tribunales no intervendremos en las decisiones de una asociación privada que afecten a sus afiliados. También hemos reconocido que se deben agotar los procedimientos internos de la organización antes de

acudir a los tribunales. No obstante, sí podemos intervenir, entre otras circunstancias, cuando la parte esté expuesta a un daño irreparable y ante la ausencia de un remedio adecuado en ley. Luego de considerar las circunstancias particulares de este caso, concluimos que esta excepción está presente, por lo que el foro primario no abusó de su discreción al conceder el remedio de *injunction*.

A satisfacción del foro primario, los peticionarios demostraron que comenzaron su relación con las entidades demandadas cuando estas reconocían el programa del "hijo de franquicia" y que actuaron conforme a las manifestaciones que les hicieron sobre las oportunidades que tendrían como tales de cumplir con los requisitos impuestos por el Reglamento General del BSN, por lo que confiaron de esta forma poder entrar en sus equipos de interés de la única liga profesional de baloncesto de Puerto Rico.

Además, demostraron que el estado de derecho manifestado por las entidades afectó su decisión de aceptar jugar por dos años y sin remuneración en las categorías menores con ambos equipos. En lo pertinente, la Sentencia de 2 de febrero de 2024 incluyó las determinaciones de hechos siguientes:

> 30. Según la práctica usual hasta recientemente, a jugadores como los menores demandantes se les orientaba sobre las oportunidades que tendrían como "hijos de franquicia" si aceptaran jugar en las categorías menores para una franquicia del BSN. Por ello, la existencia de ese programa fue

material y esencial para la decisión de ese jugador de aceptar jugar en las categorías menores con esa franquicia particular.

31. Como parte de programa de desarrollo de categoría juvenil de los Gigantes de Carolina, al menor demandante Alejandro Carmona Orellana y a sus padres se les explicó sobre los requisitos, beneficios y ventajas de poder ser elegido eventualmente como "hijo de franquicia" por ser parte de dicho equipo.

32. El menor demandante Alejandro Carmona Orellana ha jugado en la totalidad de los torneos y ha cumplido con la totalidad de los requisitos aplicables para ser considerado como "hijo de franquicia" bajo la disposición antes reseñada del Artículo 20.1 del Reglamento del BSN.
[…]
43. Por su parte, al menor demandante Joel Alejandro Negrón Gutiérrez y a su madre, Lizmarie Gutiérrez de Jesús, también se les orientó desde un inicio sobre el beneficio que representaba ser considerado eventualmente como "hijo de franquicia" bajo el estado de derecho que surgía del Artículo 20.1 del Reglamento del BSN. Por eso, como familia tomaron la decisión de realizar los esfuerzos necesarios para cumplir con los requisitos del programa y jugar torneos para el equipo en las ligas menores de los Osos de Manatí.
[…]
52. Por sus conversaciones con Iván Ríos [dirigente en propiedad de los Osos de Manatí], Carlos Calcaño [asistente del dirigente del equipo Osos de Manatí] y Yanantonio Acosta [asistente dirigente de los Osos de Manatí], el menor demandante Joel Alejandro Negrón Gutiérrez y sus padres han concluido que su próximo paso de desarrollo profesional debe ser con los Osos de Manatí en la liga superior del BSN, franquicia que lo ha incluido y considerado a él como parte de su proyecto deportivo.
Apéndice, págs. 32-35.

Además, el Sr. Héctor Horta Santini, apoderado del equipo de los Gigantes de Carolina expresó que "Los Gigantes de Carolina, los Osos de Manatí y los Mets de Guaynabo han estado dispuestos a cumplir con lo ofrecido a los jugadores de categorías menores que ingresaron al programa de hijos

de franquicia con la vigencia de un reglamento que lo permitía y le otorgaba unos derechos bajo unos parámetros que tienen que cumplir". Declaración Jurada, Apéndice, pág. 500.

De igual forma, los peticionarios demostraron su cumplimiento con los requisitos para convertirse en "hijos de franquicia" previo a la aprobación de la enmienda reglamentaria que eliminaba esta figura, así como la urgencia de que este asunto fuera atendido ante el inminente comienzo del proceso de inscripción y selección de jugadores para la nueva temporada del BSN. Como indican las determinaciones de hecho pertinentes:

> 60. Los menores demandantes han cumplido con los requisitos que estableció el propio BSN mediante dicha disposición reglamentaria, lo que conllevó sacrificios e inversión de tiempo y recursos económicos en términos personales y familiares. […]
> 127. La inscripción al torneo de novicios de las ligas menores del BSN comenzó el 1 de febrero de 2024. Además, la fecha límite de inscripción en el sorteo de jugadores del BSN es el 15 de febrero de 2024.
>
> 128. Por tanto, en estos momentos los menores demandantes tienen que decidir necesariamente cuál será el próximo paso que tomarán para su desarrollo profesional en el baloncesto en atención a las mencionadas fechas cercanas. Apéndice, págs. 36-46.

En vista de las determinaciones de hecho realizadas por el foro primario, concluimos que los peticionarios demostraron claramente los daños que sufrirían de aplicárseles la enmienda. Según se desprende del expediente, ambos jugadores están dirigidos a ser parte de

los Gigantes de Carolina y los Osos de Manatí, pues estas franquicias expresaron que los incorporarían bajo el programa del hijo de franquicia de no ser por la enmienda al reglamento que la eliminaba. Por todo lo anterior, concluimos que el foro de instancia no abusó de su discreción al conceder el *injunction*. Ante las particularidades de este caso y en ausencia de abuso de discreción, el foro apelativo intermedio no debió interferir con esa determinación.

## IV

Por los fundamentos expresados, acogemos el recurso como *certiorari*, expedimos el mismo, revocamos la Sentencia recurrida del Tribunal de Apelaciones y reinstalamos la Sentencia del Tribunal de Primera Instancia.

Se dictará Sentencia de conformidad.


                                    Mildred G. Pabón Charneco
                                         Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Alejandro "Bimbo" Carmona Sánchez y Sherlil Orellana Gutiérrez, por sí y en representación de su hijo menor de edad, Alejandro Carmona Orellana; y Héctor Joel Negrón Pagán y Lizmarie Gutiérrez de Jesús por sí y en representación de su hijo menor de edad, Joel Alejandro Negrón Gutiérrez<br><br>    Peticionarios<br><br>          v.<br><br>Baloncesto Superior Nacional, Corp.; Gigantes de Carolina; Osos de Manatí; y otros<br><br>    Recurridos | AC-2024-0022 | *Certiorari* |

SENTENCIA

En San Juan, Puerto Rico, a 18 de junio de 2024.

Por los fundamentos expresados, acogemos el recurso como *certiorari*, expedimos el mismo, revocamos la Sentencia recurrida del Tribunal de Apelaciones y reinstalamos la Sentencia del Tribunal de Primera Instancia.

Lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez y el Juez Asociado señor Estrella Martínez no intervinieron.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo