Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| **BOSCO IX OVERSEAS, LLC, BY FRANKLIN**<br><br>Recurrido<br><br>v.<br><br>FERNANDO JESUS PAONESSA LOPEZ;<br><br>Demandado<br><br>**ANNETTE BRAFFETTE MULLINELLI**<br><br>Codemandada Peticionaria | KLCE202401219 | **CERTIORARI**<br>Procedente del Tribunal de Primera Instancia, Sala Superior de **Fajardo**<br><br>Caso Núm.:<br>**N3CI201100155 (803)**<br><br>Sobre: **Cobro de Dinero y Ejecución de Hipoteca** |

Panel integrado por su presidenta la Juez Domínguez Irizarry, el Juez Ronda del Toro y el Juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de enero de 2025.

Comparece ante nos, Annette Braffette Mullinelli, en adelante, Braffette Mullinelli o peticionaria, solicitando que revisemos la *"Resolución"* del Tribunal de Primera Instancia, Sala Superior de Fajardo, en adelante, TPI-Fajardo, el día 13 de agosto de 2024. Mediante el referido dictamen, el Foro Primario declaró *"No Ha Lugar"* una solicitud de desestimación de la peticionaria.

Por los fundamentos que expondremos a continuación, *expedimos* el auto solicitado.

**I.**

En el año 1988, Braffette Mullinelli contrajo nupcias con Fernando Paonessa López, en adelante, Paonessa López.[1] El 10 de junio de 2002, Braffette Mullinelli le otorgó un *"Poder General"* a su

---

[1] Apéndice del recurso, pág. 7.

Número Identificador
SEN2025_____

entonces esposo, Paonessa López, para que este actuara como "Apoderado General" en los asuntos de la Sociedad de Bienes Gananciales compuesta por ambos.[2]

Alega la peticionaria que utilizando el *"Poder General"* otorgado a este, Paonessa López suscribió unilateralmente un pagaré y otorgó una escritura de hipoteca en garantía de pagaré, a favor de Scotiabank de Puerto Rico, en adelante, Scotiabank, el día 28 de septiembre de 2007.[3] Mediante el pagaré otorgado, se le desembolsó al matrimonio Paonessa-Braffette la suma de $1,350,000.00.

Así las cosas, el 9 de marzo de 2011, Scotiabank presentó una *"Demanda"* en cobro de dinero y ejecución de hipoteca contra el matrimonio Paonessa-Braffette.[4] Alegó que estos no habían cumplido con los acuerdos estipulados en el pagaré hipotecario, y tenían un balance de $1,312,077.46. El 7 de septiembre de 2011, los demandantes presentaron su *"Contestación a Demanda",* en la que, entre otras cosas, se reservaron el derecho a levantar las defensas que surgieran del descubrimiento de prueba.[5]

Luego, en el año 2012, Braffette Mullinelli y Paonessa López se divorciaron.[6] Al año siguiente, la peticionaria presentó una petición de quiebra, bajo el Capítulo 11 del Código de Quiebras, 11 U.S.C., sec. 1101.[7] En la documentación de la petición referida, la peticionaria reconoce como parte de las propiedades inmuebles de las que es deudora, la propiedad con la cual se garantizó el pagaré hipotecario a favor de Scotiabank.[8]

---

[2] Apéndice del recurso, pág. 122.
[3] *Id.,* pág. 2.
[4] *Id.,* pág. 1.
[5] *Id.,* pág. 5.
[6] *Id.,* pág. 7.
[7] *Id.,* pág. 32.
[8] *Id.,* pág. 45.

Posteriormente, el 15 de diciembre de 2021, Paonessa López presentó una petición de quiebra al amparo del mismo capítulo.[9] Franklin Credit Management Corporation, como administrador de Bosco IX Overseas, LLC, en adelante, Bosco o recurrida, quien para esta fecha había adquirido los derechos del pagaré hipotecario en cuestión, intervino en la petición de quiebra de Paonessa López. Este último se opuso, arguyendo que el *"Poder General"* mediante el cual suscribió el pagaré era nulo, por ser ultra vires su representación de Braffette Mullinelli en el mismo.[10] Luego de algunos trámites en el Tribunal de Quiebras Federal, Paonessa López llegó a un acuerdo transaccional, en el que renunció a cualquier ataque al *"Poder General"* que le otorgó su exesposa, además de reconocer la validez de la deuda hipotecaria con Bosco.[11]

El 8 de junio de 2022, el Tribunal de Quiebras Federal ordenó a Braffette Mullinelli a expresarse con relación al aludido acuerdo, por virtud de su interés en el asunto.[12] En cumplimiento, el 15 de junio de 2022, la peticionaria le indicó mediante moción al Foro Federal que luego de revisar el acuerdo entre Paonessa López y Bosco, y que el mismo beneficia a todas las partes, *no se oponía al mismo*.[13] Por ello, el 16 de junio de 2022, el Foro Federal aprobó el acuerdo transaccional en cuestión.

Luego de varios incidentes procesales que no necesitan ser pormenorizados, Braffette Mullinelli radicó una *"Moción en Solicitud de Desestimación por Nulidad de Pagaré"* el 30 de abril de 2024.[14] En la referida moción, la peticionaria arguye en apretada síntesis que Paonessa López compareció y suscribió el pagaré hipotecario objeto de la demanda, de manera unilateral y en alegada

---

[9] *Id.,* pág. 67.
[10] Apéndice del recurso, pág. 90.
[11] *Id.*, pág. 95.
[12] *Id.*, pág. 107.
[13] *Id.*, pág. 105.
[14] *Id.*, pág. 7.

representación de la peticionaria. Añade que el poder que le otorgó a este, no autoriza de manera expresa a Paonessa López a gravar inmuebles de la Sociedad de Bienes Gananciales.

Posteriormente, el 23 de julio de 2024, Bosco presentó su oposición a la solicitud de desestimación de la peticionaria.[15] Arguyó que los planteamientos de la peticionaria iban en contra de sus propios actos. Esto, ya que el acuerdo transaccional entre Bosco y Paonessa López, al cual Braffette Mullinelli *no se opuso*, acordó a renunciar a cualquier ataque directo o colateral a la validez del *"Poder General"* otorgado a Paonessa López, en el procedimiento federal, y en cualquier proceso estatal.

El 13 de agosto de 2024, el TPI-Fajardo notificó que declaraba *"No Ha Lugar"* la moción de desestimación de la peticionaria.[16] Inconforme, Braffette Mullinelli radicó una *"Moción de Reconsideración"* el 26 de agosto de 2024,[17] a la cual se opuso Bosco el 23 de septiembre de 2024.[18] Finalmente, el 9 de octubre de 2024, el Foro Recurrido declaró *"No Ha Lugar"* la solicitud de reconsideración de la peticionaria.[19]

Inconforme, Braffette Mullinelli compareció mediante *"Petición de Certiorari"* ante esta Curia el 8 de noviembre de 2024. En su recurso, plantea que el TPI-Fajardo cometió los siguientes errores:

> **PRIMER ERROR:** ERRÓ EL TPI AL DECLARAR NO HA LUGAR LA MOCIÓN DE DESESTIMACIÓN POR NULIDAD DE HIPOTECA, ASUMIENTO QUE LA RECURRENTE RENUNCIÓ A LEVANTAR LA INSUFICIENCIA DE UN PODER Y LA NULIDAD DEL PAGARÉ HIPOTECARIO.
>
> **SEGUNDO ERROR:** ERRÓ EL TPI AL INTERPRETAR QUE LA MOCIÓN INFORMATIVA DE LA RECURRENTE EN EL TRIBUNAL DE QUIEBRAS (APÉNDICE XIII) CONSTITUYÓ

---

[15] Apéndice del recurso, pág. 16.
[16] *Id.*, pág. 108.
[17] *Id.*, pág. 110.
[18] *Id.*, pág. 115.
[19] *Id.*, pág. 121.

UNA RENUNCIA DE ELLA A CUESTIONAR LA NULIDAD DE HIPOTECA SIMPLEMENTE PORQUE ELLA EXPRESÓ "NO TENER OPOSICIÓN" AL ACUERDO DE PAONESSA.

**TERCER ERROR:** ERRÓ EL TPI AL RESOLVER QUE LA RENUNCIA DEL CODEMANDADO ES TAMBIÉN COSA JUZGADA EN CUANTO A LA RECURRENTE-CODEMANDADA BRAFFETTE.

Mediante *"Resolución"* del 14 de noviembre de 2024, le concedimos a la recurrida hasta el 20 de noviembre de 2024 para presentar su escrito en oposición al recurso de epígrafe, conforme a la Regla 37 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 37. En cumplimiento, el 20 de noviembre de 2024, Bosco presentó su *"Oposición a la Expedición del Auto de Certiorari"*. Perfeccionado el recurso ante nos, procedemos a expresarnos.

## II.

### A. Certiorari

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *800 Ponce de León v. AIG*, 205 DPR 163, 174-175 (2020). Ahora bien, tal discreción no opera en lo abstracto. Con respecto a lo anterior y para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá

revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

 [. . .]

Según se desprende de la citada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones. *Mun. de Caguas v. JRO Construction,* 201 DPR 703, 710-711 (2019).

Luego de auscultar si el recurso discrecional cumple con las disposiciones de la Regla 52.1 de Procedimiento Civil, supra, el tribunal procederá a evaluar el recurso a la luz de la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40. La mencionada Regla expone los criterios que esta Curia deberá considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 96-97 (2008). Véase, además, *Rivera et al. v. Arcos Dorados et al.,* supra, pág. 209; *Pueblo v. Rivera Montalvo,* 205 DPR 352, 372 (2020).

Así, la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, funge como complemento a la Regla 52.1 de

Procedimiento Civil, supra. *Torres González v. Zaragoza Meléndez,* supra. La precitada Regla dispone lo siguiente:

> El [T]ribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A)   Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B)   Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C)   Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D)   Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E)   Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F)   Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G)   Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.
>
> 4 LPRA Ap. XXII-B, R. 40.

Sin embargo, ninguno de los mencionados criterios es determinante, por sí solo, para este ejercicio y no constituye una lista exhaustiva. *García v. Padró,* 165 DPR 324, 335 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty,* supra, pág. 97. (Énfasis omitido).

Nuestro Tribunal Supremo ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la

discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial*". Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Véase, además, *W.M.M., P.F.M. et al. v. Colegio et al.,* 211 DPR 871, 903 (2023); *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000); *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992).

### B. Impedimento Colateral por Sentencia

La doctrina de cosa juzgada o *res judicata* "tiene el propósito de dar la debida dignidad a las actuaciones de los tribunales." *Méndez v. Fundación,* 165 DPR 253, 267 (2005). Dicha doctrina responde al interés del Estado en que se les ponga fin a los litigios y evitar que se someta en múltiples ocasiones a un ciudadano a las molestias que supone litigar la misma causa. *S.L.G. Szendry Ramos v. Consejo Titulares*, 184 DPR 133, 154 (2011); *Méndez v. Fundación,* supra, citando a *Pagán Hernández v. U.P.R.*, 107 DPR 720, 732 (1978) y *Worldwide Food Dis., Inc. v. Colón et al.*, 133 DPR 827, 833-834 (1993).

Ahora bien, "[p]ara que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron". Código Civil, supra, sec. 3343; *S.L.G. Szendry Ramos v. Consejo Titulares,* supra, pág. 155; R. Hernández Colón, *Práctica Jurídica de Puerto Rico, Derecho Procesal Civil,* San Juan, Ed. LexisNexis de Puerto Rico, Inc., 2017, sec. 103; pág. 3. Para determinar si procede la defensa de cosa juzgada, debemos examinar "si los hechos y fundamentos de las peticiones son los

mismos en lo que afecta a la cuestión planteada". *Beníquez et al. v. Vargas et al.*, 184 DPR 210, 223 (2012), citando a *Worldwide Food Dis., Inc. v. Colón, supra*, pág. 835 y *A & P Gen. Contractors v. Asoc. Can*á, 110 DPR 753, 765 (1981).

De otra parte, nuestro ordenamiento jurídico reconoce la figura del impedimento colateral por sentencia como una modalidad de la doctrina de cosa juzgada. *S.L.G. Szendry Ramos v. Consejo Titulares,* supra, pág. 155; *P. R. Wire Prod. v. C. Crespo & Assoc.,* 175 DPR 139, 152 (2008); *Méndez v. Fundación, supra*, pág. 268. Nuestro Tribunal Supremo ha establecido que el impedimento colateral por sentencia "surte efectos cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y se determina mediante sentencia válida y final" y "tal determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén envueltas causas de acción distintas." *A & P Gen. Contractors v. Asoc. Caná, supra*, pág. 762. Es decir, la referida modalidad impide que se litigue en un litigio posterior un hecho esencial que fue adjudicado mediante sentencia final en un litigio anterior. *P. R. Wire Prod. v. C. Crespo & Asoc., supra*, pág. 153.

Es importante subrayar que la doctrina de impedimento colateral por sentencia se distingue de la cosa juzgada en que para aplicar la primera no es necesario que se dé el requisito de identidad de causas necesario para la segunda, "[e]sto es, que la razón de pedir, plasmada en la demanda, sea la misma en ambos litigios." *Id.*, pág. 152, citando a *Rodríguez Rodríguez v. Colberg Comas,* 131 DPR 212, 221 (1992) y *A & P Gen. Contractors v. Aso. Caná, supra*, pág. 765.

### C. *Res Judicata Federal*

La aplicación interjurisdiccional de la doctrina de cosa juzgada ocurre en dos escenarios distintos. El primero, cuando se

presenta en el Tribunal de Primera Instancia una sentencia federal final y firme. El otro escenario ocurre cuando se presenta en el Tribunal de Distrito una sentencia final y firme de un tribunal local. *Santiago González v. Mun. de San Juan,* 177 DPR 43, 49 (2009). En el caso de autos, nos enfrentamos al segundo escenario.

Ahora bien, cuando se presenta en el Foro Estatal un dictamen federal como para levantar la defensa de cosa juzgada, hay que analizar el fundamento jurisdiccional que asumió el Tribunal de Distrito Federal. *Comisión de los Puertos de Mayagüez v. Gonzalez Freyre,* 211 DPR 579, 603 (2023). Cuando la jurisdicción federal se fundamente en un estatuto federal, como en el caso de autos (Código de Quiebras Federal), entonces se aplicará la doctrina de cosa juzgada, o res judicata federal. *Id.*

Así como la doctrina estatal, la federal busca evitar que las partes tengan que incurrir en gastos y las molestias de litigar un asunto múltiples veces. *Montana v. U.S.,* 440 U.S. 147 (1979). La doctrina de cosa juzgada federal, también contempla la modalidad de impedimento colateral por sentencia, en inglés, *issue preclusión.* Para ello, deben concurrir los siguientes elementos: "(1) el asunto de hecho o derecho sea el mismo en ambos pleitos; (2) se haya litigado en un pleito anterior; (3) se haya determinado mediante una sentencia final, y (4) la determinación haya sido esencial para el fallo." *Marrero Rosado v. Marrero Rosado,*178 DPR 476, 491 (2010). Sin embargo, la doctrina *res judicata* federal no es absoluta. *Comisión de los Puertos de Mayagüez v. Gonzalez Freyre,* supra. Atada a los contornos del debido proceso de ley, la mencionada doctrina no puede aplicarle a una parte que "no ha tenido una oportunidad plena y justa de litigar las reclamaciones y cuestiones resueltas en un pleito". *Id.*

Por ser relevante al caso de autos, destacamos que nuestro Alto Foro ha distinguido el efecto de una estipulación en el Tribunal

de Quiebras. Cuando una parte estipule un hecho dentro de un proceso de quiebra, al amparo del Capítulo de Quiebras Federal, la misma ostenta el mismo efecto de *res judicata* como una sentencia en sus méritos. *Comisión de los Puertos de Mayagüez v. Gonzalez Freyre*, supra. Nuestro ordenamiento jurídico considera las estipulaciones de una parte con tan gran severidad, que una vez estipulado un hecho, esta admisión obliga tanto a las partes que acordaron, como a los tribunales. *Rivera Menéndez v. Action Service*, 185 DPR 431, 440 (2012).

### D. Doctrina de los Actos Propios

"[L]a conducta contradictoria no tiene lugar en el campo del Derecho, y debe ser impedida." *Aponte Valentín et al. v. Pfizer Pharm.,* 208 DPR 263, 287 (2021). Ante ello, como corolario del principio de buena fe, se ha reconocido la norma de que a nadie es lícito ir ni obrar contra sus propios actos. *Carmona Sánchez y otros v. Baloncesto Superior Nacional y otros*, 2024 TSPR 65, 213 DPR ___ (2024); *Aponte Valentín et al. v. Pfizer Pharm.*, supra, pág. 287.

Los elementos constitutivos de la doctrina aludida son:

(a)    Una conducta determinada de un sujeto;
(b)    que haya engendrado una situación contraria a la realidad, esto es, aparente y mediante tal apariencia, susceptible de influir en la conducta de los demás;
(c)    y que sea base de la confianza de otra parte que haya procedido de buena fe y que, por ello, haya obrado de una manera que le causaría un perjuicio si su confianza quedara defraudada.

*Carmona Sánchez y otros v. Baloncesto Superior Nacional y otros,* supra.

Por ello, nuestro estado de derecho ha incorporado "la regla de que nadie puede ir en contra de sus propios actos". *OCS v. Universal*, 187 DPR 164, 172 (2012); *Vivoni Farage v. Ortiz Carro*, 179 DPR 990, 1010 (2010). De esta manera, se evita que una parte

asuma una conducta contradictoria a las expectativas que generó en otra. *Domenech v. Integration Corp.*, 187 DPR 595, 621 (2013); *Santiago et al. v. Rodríguez et al.,* 181 DPR 204, 217 (2011); *Int. General Electric v. Concrete Builders*, 104 DPR 871, 876 (1976).

### III.

La peticionaria recurre ante esta Curia, luego de solicitarle al Foro Primario que desestime la causa de acción de Bosco en su contra por la nulidad del pagaré hipotecario a favor del recurrido, y este declinara hacerlo. En su recurso, nos plantea tres errores que, en síntesis, arguyen que el TPI-Fajardo se equivocó al entender que Braffette Mullinelli renunció a su derecho de levantar la insuficiencia del *"Poder General"*, mediante el cual su esposo, Paonessa López, suscribió el pagaré hipotecario en cuestión, en su moción informativa al Foro Federal. La peticionaria entiende y argumenta que la defensa que ahora levanta no es cosa juzgada. *No le asiste razón.* Por estar íntimamente relacionados entre sí, *discutiremos los errores en conjunto.*

La demanda contra el matrimonio Paonessa-Braffette fue presentada en el año 2011, apenas un año antes del divorcio de estos. Es decir, este asunto y sus contornos procesales se han litigado – tanto en el Foro Estatal como en el Foro Federal – hace más de diez años. Deseamos comenzar puntualizando que de los documentos que obran en nuestro expediente, no surge que la peticionaria haya intentado levantar la alegada nulidad del pagaré previamente. Tampoco nos ha colocado en posición para evaluar directamente el pagaré suscrito con Scotiabank en el año 2007.

Si bien es cierto que en la contestación a la demanda radicada en el año 2011 la peticionaria se reservó el derecho a levantar otras defensas, estamos obligados a evaluar la misma a la luz de los eventos que han transcurrido por espacio de más de diez (10) años.

Por lo tanto, nos encontramos forzados a concluir que esta defensa quedó renunciada en los procesos de quiebra de ambos Paonessa López y Braffette Mullinelli. Veamos.

Como parte de los documentos necesarios para la petición de quiebra, la peticionaria le informó al Tribunal de Quiebras, entre otras cosas, sobre las propiedades inmuebles sobre las cuales configuraba como deudora. Entre las dos propiedades que listó, se encuentra la casa en Río Grande, sobre la cual adeuda en comunidad – y así mismo lo configuró – junto a Paonessa López, la cantidad de $1,312,000.00.[20]

Más adelante, en el proceso de quiebras de Paonessa López, este quiso argüir, como defensa en la intervención de Bosco, lo mismo que la peticionaria ahora intenta levantar en cuanto a la nulidad del pagaré. Sin embargo, estos configuraron un acuerdo. En el mismo, estipularon que no se levantaría en ningún Foro la alegada nulidad del pagaré, y reconocían la validez del mismo. Los efectos de este acuerdo naturalmente recaían sobre los intereses de Braffette Mullinelli. Por ello, el Foro Federal le concedió un espacio para presentar sus objeciones al mismo.

Muchos años posterior a su divorcio y el comienzo de la demanda, en el proceso de evaluar un acuerdo entre el acreedor Bosco y Paonessa López (quien había reconocido como codeudor en la propiedad que garantizaba el pagaré de Bosco), la peticionaria no levantó ninguna objeción al mismo. Justipreciamos que luego de que el Foro Federal aceptara el mismo, *sin objeción alguna de la peticionaria,* las estipulaciones del acuerdo advinieron final y firme para las partes involucradas en el mismo.

Esta Curia entiende que al caso de marras aplica la doctrina de *res judicata,* específicamente la federal. Esto último, pues se dan

---

[20] Apéndice del recurso, pág. 45.

los elementos que así lo requieren. La validez del pagaré hipotecario es un hecho que se estipuló entre Bosco, la peticionaria y Paonessa López en el proceso de quiebra de este último, y el mismo advino final y firme con la orden del Foro Federal aprobando el acuerdo. Además, la determinación de la validez del pagaré resultaba medular para este fallo, ya que era precisamente esta la defensa de Paonessa López contra Bosco.

Por otro lado, la doctrina de *res judicata* federal no puede ser aplicada contra quien no ha tenido la oportunidad de plantear sus reclamos. Sin embargo, este no es el caso de la peticionaria, quien intenta distanciarse del dictamen del Tribunal de Quiebras con relación al acuerdo transaccional. El Foro Federal estuvo siempre consciente que las estipulaciones de este acuerdo podían afectar los derechos de la peticionaria. Tan es así, que le otorgó un término para presentar sus objeciones. Incluso, en la orden del 8 de junio de 2022, en la que le concedió siete (7) días a la peticionaria para presentar sus objeciones, el Tribunal de Quiebras indicó que si esta presentaba alguna, se celebraría una vista el 20 de julio de 2022.

El acuerdo y sus estipulaciones advinieron final y firme en el año 2022. Entendemos que es un ejercicio contrario a los actos propios de la peticionaria, intentar levantar la nulidad del pagaré hipotecario dos años más tarde contra Bosco. La moción informativa de la peticionaria en la que, no solo no presentó objeción alguna al acuerdo transaccional, sino que expresó que el mismo beneficiaba a todas las partes, creó en el recurrido una expectativa de confianza contra cualquier ataque colateral al pagaré hipotecario objeto de la controversia.

**IV.**

Por los fundamentos que anteceden, *expedimos el recurso de autos y confirmamos la "Resolución" recurrida.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones