ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ESTHER AMÉRICA DOMÉNECH VILÁ<br><br>APELANTE<br><br>V.<br><br>CLAUDIA ANDREA FREYRE ESCUDERO<br><br>APELADA | KLAN202400329 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Núm.:<br>k cd2015-2237<br><br>Sobre:<br><br>Cobro de Dinero |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Candelaria Rosa, la jueza Alvarez Esnard, y la jueza Díaz Rivera

Brignoni Mártir, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de septiembre de 2024.

Comparece ante nos, Esther América Domenech Vilá (en lo sucesivo, "la apelante"). Su comparecencia es a los fines de solicitar nuestra intervención para que dejemos sin efecto la determinación emitida el 28 de febrero de 2024 y notificada el 5 de marzo de 2024, por el Tribunal de Primera Instancia, Sala Superior de San Juan. Mediante el referido dictamen, dicho tribunal determinó que la apelante le adeudaba a Claudia Andrea Freyre Escudero (en adelante, "la apelada"), $35,200.00 en concepto de canon de arrendamiento. Esta cifra surge luego de descontar tanto los $20,000.00 adeudados por la apelada a la apelante, como la cantidad de $13,800.00 pagados por la apelante en concepto de cuotas de mantenimiento de la propiedad en cuestión. A su vez, el foro sentenciador desestimó la reclamación presentada, dado que la apelada renunció al cobro de $35,200.00.

Por los fundamentos que expondremos a continuación, se *confirma* la determinación recurrida.

**I.**

El 19 de octubre de 2015, la apelante presentó la "*Demanda*" de epígrafe. En esencia, adujo que le había prestado a la apelada una suma monetaria, y que ésta había incumplido con satisfacer la cantidad debida. Sostuvo, que, para contraer la referida obligación, la apelada suscribió un pagaré a su orden. Indicó, que el préstamo fue por la cantidad de $20,000.00, más una suma de interés a razón del cuatro por ciento (4%) anual. Arguyó, que la referida cantidad estaba vencida y era una líquida y exigible. Así pues, peticionó al foro sentenciador que ordenara a la apelada pagar dicha cantidad. Además, solicitó el pago de costas, gastos y honorarios de abogado.

En reacción, el 11 de enero de 2017, la apelada presentó una "*Moción Contestación a la Demanda y Reconvención.*"[1] En síntesis, negó las alegaciones expuestas en la "*Demanda*." Además, arguyó que la apelante le debía una cantidad sustancial de dinero por cánones de arrendamientos vencidos y no pagados ascendentes a $39,000.00. En el mismo escrito, la apelada presentó una "*Reconvención.*" En esta expresó, que perfeccionó junto a la apelante un contrato verbal. Alegó, que mediante dicho acuerdo le arrendó a la apelante un apartamento de su propiedad localizado en el Municipio de San Juan. Añadió, que una de las estipulaciones contractuales consistía en que la apelante pagaría un canon mensual de arrendamiento, retroactivo al comienzo de su posesión de hecho, una vez se recuperara de unos problemas económicos y de salud que había enfrentado. Según sostuvo, antes de que comenzara la vigencia de dicho canon, la apelante debía satisfacer las cuotas de mantenimiento del bien inmueble.

Añadió, que al momento en que la apelante le prestó la cuantía de $20,000.00, le realizó un requerimiento en aras de establecer el referido

---

[1] El 22 de junio de 2017, la apelada, presentó un escrito intitulado "*Segunda Moción Solicitando de Reconsideración y Solicitud de Autorización para Enmendar la Contestación a la Demanda.*" En síntesis, peticionó al foro sentenciador enmendar la "*Contestación a la Demanda*," a los fines de que sus contestaciones cumplieran con el ordenamiento procesal civil. El 7 de julio de 2017, el foro sentenciador, notificó una "*Orden*" mediante la que declaró *Ha Lugar* la petición de la apelada.

canon mensual de arrendamiento. No obstante, esgrimió, que no obtuvo respuesta alguna de la apelante sobre dicho requerimiento. Agregó, que en septiembre de 2010 y enero de 2011 envió a su secretaria y su asistente, respectivamente, a nuevamente reclamarle a la apelante lo estipulado con relación a fijar un canon de arrendamiento. Argumentó, que en ambas ocasiones la apelante no fue responsiva.

Ante tal falta de respuesta, alegó que le comunicó a la apelante que dejaría de satisfacer los intereses del contrato de préstamo. A su vez, adujo que le expresó que compensaría los referidos intereses y el principal de dicho préstamo con lo adeudado por ella en concepto de renta. Agregó, que computaría lo que habría de compensar en concepto de renta, desde el momento en que la apelante entró en posesión natural de la propiedad. Esto, bajo un canon de arrendamiento de $1,000.00 mensuales. Así las cosas, expresó que la apelante contestó a esta última comunicación, y le propuso una reunión para establecer una transacción entre el pago del préstamo y el canon de arrendamiento. En virtud de lo expuesto, solicitó al foro sentenciador que ordenara a la apelante el pago de $59,000.00, en concepto de cincuenta y nueve (59) meses de canon de arrendamiento sin pagar, lo que, al restarle la suma compensada, resultaría en $39,000.00. Además, peticionó $5,000.00 en concepto de honorarios de abogado.

En respuesta, el 23 de enero de 2017, la apelante presentó una "*Réplica a la Reconvención*." En síntesis, negó las alegaciones en torno a lo pactado sobre el canon de arrendamiento. Sostuvo, que lo que en realidad acordaron las partes es que ella solo estaría satisfaciendo el pago de las cuotas de mantenimiento adeudadas y subsiguientes y del seguro de la propiedad.

Tras varias incidencias procesales que no son necesarias de pormenorizar, el 20 de diciembre de 2019, la apelante presentó una "*Solicitud de Sentencia Sumaria*." Mediante esta, peticionó al foro sentenciador que resolviera sumariamente el pleito, dado que, no existía

controversia sobre que la apelada le adeudaba la cantidad de $20,000.00; más intereses. Esto, conforme al contrato de préstamos suscrito por las partes. A la luz de lo anterior, solicitó que se determinara que la apelada le adeudaba la cantidad total de $28,815.07; más $5,000.00 de honorarios de abogado.

Luego de que la apelada presentara su oposición al respecto, el 8 de junio de 2023, el tribunal de instancia notificó una "*Sentencia Parcial Enmendada.*"[2] En la referida sentencia, dicho tribunal determinó que no existía controversia sobre el hecho de que las partes habían suscrito un contrato de préstamo, el cual la apelada como prestataria no había pagado. A su vez, concluyó que era un hecho incontrovertido que también existió un contrato verbal entre las referidas partes. Sin embargo, había controversia en cuanto a sus términos. Por consiguiente, solo resolvió mediante la "*Sentencia Parcial Enmendada*" el cobro de lo reclamado en la demanda, y dejó para dilucidar en una vista evidenciaria las posturas de las partes con relación al acuerdo verbal.

Así las cosas, el 25 de enero de 2024, el tribunal de instancia celebró una vista evidenciara. Esta, se limitó a dilucidar la controversia que existía respecto al contrato verbal. Posterior a la celebración de dicha vista, el 5 de marzo de 2024, el foro sentenciador notificó la "*Sentencia*" que nos ocupa. Mediante esta, el referido foro determinó que la apelante le adeudaba a la apelada $35,200.00 en concepto de canon de arrendamiento. Esta cifra surge luego de descontar tanto los $20,000.00 adeudados por la apelada a la apelante, como la cantidad de $13,800.00 pagados por la apelante en concepto de cuotas de mantenimiento de la propiedad en cuestión. A su vez, el foro sentenciador desestimó la reclamación presentada, dado que la apelada renunció al cobro de los $35,200.00.

---

[2] Según advirtió dicho tribunal, la referida sentencia fue enmendada a los únicos efectos de clarificar que el dictamen no se trataba de una resolución, sino de una sentencia.

En la referida "*Sentencia*," el tribunal de instancia, incorporó las siguientes determinaciones de hechos las cuales había esbozado en su "*Sentencia Parcial Enmendada*:"

1. La parte demandada, Claudia Andrea Freyre Escudero, otorgó un pagaré a la orden de Esther América Doménech, por la suma de $20,000.00, vencedero el 31 de marzo de 2015, bajo el affidávit número 4182 y ante la Notario Ruth Castro Algarín.

2. El pagaré provee para el pago de intereses a razón del 4% de interés anual, acumulados desde el 30 de marzo de 2009.

3. A la fecha de la radicación de la demanda y al día 20 de diciembre de 2019, Doña Claudia le adeudaba a Doña Esther, el principal completo del pagaré, más los intereses legales acumulados desde su otorgamiento.

4. La deuda se encuentra vencida, es líquida y exigible.

5. El préstamo ha generado intereses acumulados desde el 30 de marzo de 2009 al 20 de diciembre de 2019, que suman la cantidad de $8,515.07, más aquellos intereses que continúan acumulándose a razón de $2.19 diarios.

6. Doña Claudia nunca hizo pago alguno de intereses o de principal de la deuda arriba relacionada y pese a las gestiones que al efecto se hicieron.

7. Doña Claudia no es menor de edad, ni incapacitada, ni miembro de las fuerzas armadas.

8. Entre las partes hubo un contrato verbal mediante el cual Doña Esther ocupó un apartamento propiedad de Doña Claudia.

9. Doña Esther se comprometió a pagar las cuotas de mantenimiento y de seguros del apartamento 501 Condominio Iberia, propiedad de Doña Claudia.

A su vez, el tribunal de instancia esbozó las siguientes determinaciones de hechos que surgen de la vista evidenciaria:

1. La Doña Esther era socia de un negocio que tenía la mamá de Doña Claudia, por lo que la consideraban una buena amiga.

2. El negocio era de "coaching" y terapias holísticas.

3. El 11 de junio de 2007 falleció la mamá de Doña Claudia y aunque terminó el negocio, Doña Ester permaneció en el local hasta que terminó el contrato.

4. Doña Esther salió del país por varios años, pero regresó por una enfermedad sufrida en Brasil.

5. El apartamento de la mamá de Doña Claudia estaba disponible y la demandada se lo ofreció a Doña Esther.

6. El apartamento era el #501del Condominio Iberia.

7. Doña Claudia había adquirido el apartamento por herencia.

8. En el Condominio Iberia los arrendamientos, para aquel momento, rondaban entre los $1,200.00 y los $1,500.00 mensuales.

9. Las partes acordaron la renta en $1,000.00, de los cuales Doña Claudia recibiría $700.00 y con los restantes $300.00 Doña Esther se ocuparía de pagar $200.00 mensuales de mantenimiento y $100.00 mensual para el seguro de "hazzard".

10. El seguro se pagaba una vez al año por la cantidad de $1,200.00.

11. Doña Esther comenzó a residir el apartamento el 1 de septiembre de 2009.

12. Doña Claudia necesitaba $20,000.00.

13. Doña Esther le prestó dinero y Doña Claudia estuvo de acuerdo en firmar un pagaré.

14. Doña Esther no pagaba la renta del apartamento, pero Doña Claudia le estaba dando tiempo para que comenzara su negocio otra vez y tuviera estabilidad económica.

15. Luego acordaron compensar la renta que Doña Esther debía pagar, con el dinero que le debía Doña Claudia.

16. Doña Esther pagó siempre el mantenimiento.

17. De no haber pagado el mantenimiento el edificio le hubiera cortado el agua.

18. Transcurridos los meses cubiertos por los $20,000.00, Doña Esther no realizó ningún otro pago que no fuera mantenimiento.

19. A partir de septiembre de 2011, Doña Claudia hizo varias gestiones de cobro de la renta.

20. Doña Esther se mudó en el mes de mayo de 2015.

21. Doña Esther vivió 69 meses en el apartamento.

22. Doña Esther pagó el mantenimiento por esos meses por lo que pagó $13,800.00.

23. La renta a la que Doña Esther se obligó asciende a $69,000.00, menos los $20,000 del acuerdo, totaliza $49,000.00.

24. Doña Esther tiene una deuda con Doña Claudia de $35,200.00

25. Doña Claudia renuncia al cobro de este dinero.

En desacuerdo, el 4 de abril de 2024, la apelante presentó oportunamente la "*Apelación*" de epígrafe. En su escrito señaló los siguientes errores:

1. Erró el Honorable Tribunal de Primera Instancia al determinar probados que existió un contrato de arrendamiento donde Doña Esther le adeudaba a la parte recurrida $69,000 a ser compensada con $20,000 de la deuda de la parte recurrente; que las partes acordaron una

renta de $1,000 de los que la parte recurrida recibiría $700 y los restantes $300 los utilizaria Doña Esther para pagar $200 para cuotas de mantenimiento y $100 para el seguro del condominio; que Doña Esther no le pagó renta a la parte recurrida; que las partes acordaron compensar la alegada renta con el dinero que la parte recurrida le debía a Doña Esther, que la parte recurrida hizo varias gestiones de cobro de renta y que Doña Esther le adeuda a la parte recurrente la suma de $35,200 y que la recurrente renuncio al cobro de una deuda que a todas luces es inexistente.

2. Erró el Honorable Tribunal de Primera Instancia, al ignorar totalmente los requerimientos de admisiones que fueron admitidos por el TPI y confirmados por el Tribunal de Apelaciones y el Tribunal Supremo.

3. Erró el Honorable Tribunal de Primera Instancia, al ignorar totalmente la declaración jurada sometida por Doña Esther como parte de la solicitud de Sentencia Sumaria.

4. Erró el Honorable Tribunal de Primera Instancia, al ignorar las repetidas contradicciones de la parte recurrida en el contrainterrogatorio.

5. Erró el Honorable Tribunal de Primera Instancia, al ignorar totalmente la evidencia de consistente en las admisiones de la parte recurrida en sus dos peticiones de quiebras coetáneas al caso ante el TPI, donde expresó bajo juramento que no tenía reclamaciones o reconvenciones de tipo alguno contra persona alguna.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver la controversia ante nuestra consideración.

**II.**

**A.     Teoría General de los Contratos:**

Como es sabido, los contratos son negocios jurídicos bilaterales que constituyen una de las formas de obligación. Art. 1042 del Código Civil, 31 LPRA sec. 2992;[3] *Amador Parrilla v. Concilio Iglesia Universal de Jesucristo*, 150 DPR 571, 581 (2000). Se ha reconocido reiteradamente que en Puerto Rico aplica el principio de la libertad de contratación. *Guadalupe Solís v. González Durieux,* 172 DPR 676, 683 (2007); *Álvarez de Choudens v. Rivera*, 165 DPR 1, 17 (2005); *Arthur Young & Co. v. Vega III,* 136 DPR 157, 169 (1994). De acuerdo con este pilar, *las partes contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente*, siempre que éstas no sean contrarias a la ley, a la moral o al orden público. Código Civil de Puerto Rico, *supra*, sec. 3372 (Énfasis suplido); *Carmona Sánchez y otros v. Baloncesto Superior*

---

[3] En el presente caso hacemos referencia a las disposiciones del Código Civil de Puerto Rico del año 1930, dado que, era la legislación general vigente al momento de establecerse la relación contractual que nos ocupa.

*Nacional y otros*, 2024 TSPR 65; *Álvarez de Choudens v. Rivera*, *supra*, pág. 18. Esto posibilita que las partes puedan contratar cuando quieran, como quieran y con quien quieran. J. Puig Brutau, *Fundamentos de Derecho Civil: Doctrina General del Contrato*, 3ra ed., Barcelona, Ed. Bosch, 1988, T. II, Vol. I, pág. 5. El contrato tiene fuerza de ley entre las partes, por lo que se debe cumplir según lo pactado. Art. 1044 del Código Civil, *supra*, sec. 2994; *Cruz Cruz y otra v. Casa Bella Corp., y otros*, 2024 TSPR 47.

Ahora bien, para que una relación contractual se perfeccione deben concurrir los elementos de consentimiento, objeto y causa. Código Civil de Puerto Rico, *supra*, sec. 3391; *Quest Diagnostics v. Mun. San Juan*, 175 DPR 994, 999 (2009); *Bosques v. Echevarría*, 162 DPR 830, 836 (2004). En lo que respecta al consentimiento, este comprende dos (2) aspectos fundamentales. El primero, se relaciona a la capacidad de consentir, y el segundo hace referencia a la prestación de ese consentimiento. *Quest Diagnostics v. Mun. San Juan,* supra, pág. 999-1000. En nuestra jurisprudencia se ha reconocido la procedencia tanto de un consentimiento expreso como de un consentimiento tácito. Véase, *Aponte Valentín et al. v. Pfizer Pharm.,* 208 DPR 263, 286 (2021). En el escenario del consentimiento tácito, el elemento determinante "es la conducta de la persona y no las palabras que utilice para expresarlo." *Íd.* Es decir, la forma en que se desarrollen los hechos en cuestión debe revelar de manera inequívoca la voluntad de consentir. *Íd.*

A partir de la existencia de un contrato, sus estipulaciones obligan al cumplimiento de lo expresamente pactado y a las "consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley. Código Civil de Puerto Rico*, supra*, sec. 3375. De igual modo, una vez perfeccionado, el contrato producirá efecto entre las partes y sus herederos, salvo que existan derechos y obligaciones no transmisibles. Código Civil de Puerto Rico, *supra,* 3374. Cabe mencionar, que "si los términos de un contrato son claros y no dejan duda sobre la intención de

KLAN202400329                                                        9

los contratantes, se estará al sentido literal de sus cláusulas." Código Civil de Puerto Rico, *supra,* sec. 1233; *Matos Rivera v. Soler Ortiz*, 2024 TSPR 50 (2024). Al interpretar un contrato, el análisis que se realice deber ser acorde al principio de la buena fe. S*.L.G. Irizarry v. S.L.G. García,* 155 DPR 713, 727 (2001). Asimismo, para juzgar la intención de los contratantes, se deberán atender los "actos de éstos, coetáneos y posteriores al contrato." Código Civil de Puerto Rico, *supra*, sec. 3472. En síntesis, en el ejercicio de interpretar un contrato "no se puede buscar oscuridad ni tergiversar la interpretación de [este] para llegar a resultados absurdos e injustos." *S.L.G Irizarry v. S.L.F. García,* supra, pág. 726.

**B.    Apreciación de la prueba:**

En nuestro ordenamiento jurídico impera una norma general de deferencia a la apreciación de la prueba y las determinaciones de hechos que realiza el Tribunal de Primera Instancia. *Pueblo v. Negrón Ramírez*, 2024 TSPR 41 (2024). Por consiguiente, nos corresponde brindarle deferencia a dicho foro salvo que exista un error manifiesto o que el tribunal sentenciador haya actuado movido por prejuicio, parcialidad o pasión. *Peña Rivera v. Pacheco Caraballo*, 2024 TSPR 48 (2024); *Cruz Flores et al. v. Hosp. Ryder et al.*, 210 DPR 465, 497 (2022); *Muñiz Noriega v. Muñoz Bonet*, 177 DPR 967, 987 (2010). Mediante esta norma de deferencia, se impone respeto a la evaluación que hace el tribunal de instancia al aquilatar la credibilidad de un testigo pues es dicho foro quien está en mejor posición para hacerlo. *Íd.* Los foros apelativos sólo tenemos ante nos expedientes "mudos e inexpresivos". *Íd.* Es el foro primario quien tiene la oportunidad de escuchar a los testigos mientras declaran y así puede apreciar su "demeanor". *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 778-779 (2022); *Colón v. Lotería*, 167 DPR 625, 659 (2006). Es dicho foro quien debe adjudicar los conflictos de prueba. *S. L. G. Rivera Carrasquillo v. A.A.A.*, 177 DPR 345, 356 (2009).

Ahora bien, esta norma no es absoluta pues procederá nuestra intervención con dicha valoración si una evaluación de la totalidad de la

prueba testifical nos provoca tal insatisfacción o intranquilidad de conciencia que perturbe nuestro sentido básico de justicia. *S. L. G. Rivera Carrasquillo v. A.A.A.*, supra, pág. 356. La parte apelante que interese su revocación es quien tiene que señalar y demostrar el fundamento para ello. *Íd.* Quien cuestione la determinación de hechos realizada es quien debe señalar el error manifiesto o fundamentar que existió pasión, prejuicio o parcialidad. *Íd.* Igualmente, intervendremos si la apreciación de la prueba realizada por el foro primario no concuerda con la realidad fáctica o "es inherentemente imposible o increíble". *Pueblo v. Irizarry*, 156 DPR 780, 789 (2002).

Será también meritoria nuestra intervención en casos en los que la apreciación de la prueba del foro primario no represente "el balance más racional, justiciero y jurídico de la totalidad de la prueba". *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021). *Miranda Cruz y otros v. S.L.G. Ritch*, 176 DPR 951, 974 (2009). El tribunal de primera instancia se excederá en el ejercicio de su discreción si, al apreciar la prueba, infundadamente le asigna gran valor a un hecho irrelevante e inmaterial, y basa su determinación exclusivamente en éste; o si injustificadamente pasa por alto un hecho material significativo que no debió ignorar; o si, aun considerando todos los hechos materiales y descartando todos los irrelevantes, los sopesa y calibra de forma liviana. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 210-211 (2023); *García v. Asociación*, 165 DPR 311, 321-322 (2005).

**III.**

En síntesis, la apelante sostiene que la "*Sentencia*" dictaminada por el foro recurrido se apoya únicamente en el testimonio mendaz y contradictorio de la apelada. Añade, que existe una "*Orden,*" emitida el 9 de abril de 2018, por el tribunal de instancia, mediante la cual se dan por admitidos los requerimientos de admisiones cursados a la apelada. No obstante, el foro recurrido al adjudicar el presente caso excluyó las admisiones que habían quedado sometidas en evidencia. Por otro lado,

aduce que estaba incapacitada mentalmente para testificar. Por consiguiente, el foro sentenciador debió considerar su declaración jurada al momento de emitir su dictamen. Finalmente, arguye que dicho foro no consideró las admisiones realizadas por la apelada en sus dos peticiones de quiebra. A través de las cuales expresaba que no tenía reclamaciones pendientes contra persona alguna.

En oposición, la apelada sostiene que la evidencia que obra en el expediente demuestra que la apelante es capaz. Agrega, que la "*Declaración Jurada*" presentada por la apelante fue tomada en consideración por el tribunal de instancia en la "*Sentencia Parcial Enmendada*." Además, expone que dicha sentencia es final y firme. Añade, que la referida "*Sentencia Parcial Enmendada*" incorpora que la controversia en torno al acuerdo verbal se debía resolver en una vista evidenciaria, tal como ocurrió. Finalmente, argumenta que la presente "*Apelación*" contiene alegaciones sobre la apreciación de la prueba. Ante ello, aduce que deberíamos prestarles deferencia a las determinaciones realizadas por el tribunal de instancia.

Tras evaluar los argumentos de las partes y la totalidad de la documentación que obra en el expediente ante nos, así como la Transcripción de la Vista Evidenciaria del 25 de enero de 2024, determinamos *confirmar* el dictamen recurrido.

Es preciso destacar que la única controversia que restaba por dilucidar en el presente caso giraba en torno a las cláusulas y condiciones del contrato verbal perfeccionado por las partes. Nótese, que solo quedaba por examinar si la apelante debía, a cambio del uso de la propiedad objeto de contrato, pagar solo el seguro y las cuotas de mantenimiento del bien inmueble o, por el contrario, satisfacer dichos pagos más un canon mensual de arrendamiento. Así pues, el único asunto ante la consideración del foro sentenciador era uno de credibilidad. Para evaluar dicha credibilidad, según expusimos, el foro recurrido está en mejor posición que este Tribunal. Ello, dado que, tiene la

oportunidad tanto de escuchar los testigos mientras declaran como de adjudicar los conflictos de prueba.

En este caso, el foro sentenciador había adjudicado, por medio de la "*Sentencia Parcial Enmendada*" que existía un contrato verbal entre las partes. Dicha sentencia advino final y firme. A su vez, la única persona testigo que se presentó en la vista evidenciaria lo fue la apelada. A la luz de lo anterior, es sabido que "la evidencia directa de un testigo que merezca entero crédito es prueba suficiente de cualquier hecho." Véase, *Pérez v. Acevedo Quiñones*, 100 DPR 894, 899 (1972). Por lo tanto, el primer error no fue cometido.

Para la discusión del segundo error debemos hacer nuevamente alusión a la "*Sentencia Parcial Enmendada*." En dicha sentencia, el foro recurrido atendió la controversia sobre los requerimientos de admisiones cursados a la apelada. A esos efectos, el referido foro, a tenor de nuestro ordenamiento procesal civil, determinó retirar los requerimientos de admisiones no contestados por la apelada. La apelante no recurrió de dicho dictamen, y transcurrieron los términos para ello. Por consiguiente, la "*Sentencia Parcial Enmendada*" advino final y firme. Ante ello, no procede que la apelante vuelva a litigar un asunto previamente adjudicado. En consecuencia, el segundo error tampoco fue cometido.

De otra parte, la apelante argumenta que el foro sentenciador ignoró al examinar la prueba la "*Declaración Jurada*" que había presentado. Esto, a pesar de que estaba incapacitada para testificar. Ambas partes tenían conocimiento de la controversia sobre términos contractuales que restaba por dilucidar. De igual modo, ambas partes fueron apercibidas de la necesidad de celebrar una vista evidenciaria. A la luz de ello, fueron igualmente notificadas de la fecha de dicha vista, la cual tenía como naturaleza principal cuestiones de credibilidad.

La apelante no compareció a la referida vista y tampoco presentó al tribunal una declaración judicial de incapacidad. Mediante la cual, pudiera rebatir la presunción de capacidad que existe en nuestro

ordenamiento jurídico. Además, tampoco presentó alguna otra evidencia a través de la cual se pudiera declarar la no disponibilidad de su testimonio. Independientemente de ello, el tribunal de instancia examinó dicha "*Declaración Jurada*" al emitir la "*Sentencia Parcial Enmendada*." Por tanto, dicha declaración no fue excluida por el referido foro.

De otra parte, los planteamientos de la apelante en cuanto a las contradicciones y admisiones de la apelada son argumentos sobre la apreciación de la prueba. Ante ello, concedemos deferencia a las determinaciones del foro sentenciador, toda vez que, su dictamen no sufre vicios de pasión, prejuicio, parcialidad o error manifiesto. A lo expresado, se le añade el hecho de que la apelada renunció a la cuantía que reclamó en concepto de los cánones de arrendamiento adeudados. Así pues, no encontramos razón suficiente que impida la desestimación de la acción incoada.

**IV.**

Por los fundamentos expuestos, *confirmamos* el dictamen recurrido.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones